JAMES A. BRADFORD, relator, plaintiff in error, *vs.* THE JUSTICES OF INFERIOR COURT, defendants in error.

1. By the Act of 1856, (pamphlet, 405,) the election of County Treasurer of Muscogee county is required to be certified and returned to the Executive Department.
2. An individual who has been appointed or elected in a manner prescribed by law, who has a designation or·title given him by law, and who exercises functions concerning the public, assigned to him by law, is a public officer.
3. The County Treasurer of Muscogee county is an officer of that county.
4. Under the Act of 14th December, 1861, entitled "An Act to authorize all volunteers and other troops in the service from this State, to vote at all elections, without reference to the place where they may be in service at the time of such elections, and for other purposes," the volunteers and other troops in the service, from Muscogee county, were entitled to vote at their several stations for County Treasurer of Muscogee county, in the recent January election for county officers.

*Mandamus,* in Muscogee Superior Court. Decision by Judge WORRILL.

The plaintiff in error, as relator, in the name of the State of Georgia, made his petition, verified by affidavit, to the presiding Judge of the Chattahoochee Circuit, Hon. E. H. WORRILL, setting forth that on the first Wednesday in January, 1862, at the general election held on that day, in the county of Muscogee, he had received a majority of the votes polled for the office of County Treasurer, and that on the first Monday in February thereafter he appeared before the Inferior Court of said county, Robert M. Gunby, Benjamin F. Coleman, H. S. Estes and John Quinn, Esquires, presiding for the purpose of being qualified as County Treasurer. Relator further states, that after several postponements of his case, the Inferior Court finally refused to admit him to said office, or to qualify him to discharge its duties, although it was admitted that at the election in said county he had received the highest number of· votes, and he therefore prays a *mandamus nisi,* requiring said Justices to show cause at the next Superior Court why a *mandamus* absolute should not be granted commanding said Inferior Court to admit

him to the office of County Treasurer, and to qualify him therefor.

The *mandamus nisi* was granted, and served upon the Justices, who, at the May Term, 1862, made answer thereto, and showed for cause against making the rule absolute, that at the election referred to, the relator and Thomas Chaffin, senior, were candidates for the office of County Treasurer, and that relator did receive a majority of the votes cast in the county, but that under the Act of 14th December, 1861, there were held on the same Wednesday elections at various camps of soldiers in this State, and in the States of Florida, Tennessee and Virginia, at which soldiers in the service, entitled to vote for county officers, did so vote, and that Thomas Chaffin received a large majority of the votes polled in the camps for the office of County Treasurer, and that after consolidating all the votes cast, both in the county and at the camps, Chaffin received a majority over relator for said office. Respondents further answer, that the returns of all the elections held in the county and at the camps were forwarded to the Executive Department, and there consolidated, and commissions issued by the Governor to those persons having the highest number of votes, and among them a commission issued to Thomas Chaffin, Senior, for the office of County Treasurer of Muscogee county for the year 1862, which commissions were, according to general usage, sent to respondents as Justices of the Inferior Court, and they were at the same time authorized by the Governor to administer to Chaffin the oath of office, and receive from him a bond for the faithful performance of his duty as County Treasurer.

Respondents answer further, that the case was continued by consent, on account of the pressure of county business, until the hearing, when, after argument, respondents were satisfied they had no jurisdiction to determine cases of contested elections, the Act of 22d January, 1852, having empowered the Governor of the State to hear and determine all cases of contested elections for any county officer, and to commission the person having the highest number of votes. Having no jurisdiction, respondents conceived it their duty to admin-

ister the oath of office to Thomas Chaffin, and receive his bond in accordance with the directions of the Executive Department, which was accordingly done, and now pray to be discharged with costs.

By agreement the case was argued and determined at Chambers. After argument had, Judge Worrill refused to make the rule *nisi* absolute, and ordered the same to be quashed, and that respondents recover of relator the costs, to be taxed by the Clerk, and relator excepts.

IVERSON & WILLIAMS, for plaintiff in error.

JOHN PEABODY, for defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

The respondents, in the Court below, placed their defense upon two grounds: 1st, That the relator had not been legally elected to the office to which he sought admission. 2ndly, That if legally elected, there being an incumbent, he had mistaken his remedy.

The first ground is the more important inasmuch as it goes to the merits of the relator's case. Originally, all County Treasurers received their appointments from the Justices of the Inferior Courts of the several counties; and so they are still appointed in many, probably in a majority of the counties. But in the year 1856, by an Act of the Legislature, the appointment of County Treasurer for the county of Muscogee, and sundry others, was taken from the Justices of the Inferior Courts and given to the people of those counties respectively. In other words, the Act provided that from and after its passage the County Treasurer for each of the counties designated in it should be elected by the qualified voters therein residing. By an Act of the 14th December, 1861, it is provided, "that all volunteers and other troops, citizens of this State, who are now by law entitled to vote, or who may at the time of such election, be entitled to vote at any election in this State, *except such elections as are not returnable to the Executive Department,* be and they are hereby entitled

to assemble at such place as they may be stationed at or in service, and cast their votes as though they were in their proper counties at such elections." The next section of the Act directs how elections shall be conducted and returned in such cases, which is not material in this case. The record discloses that in the month of January last, in the county of Muscogee, and at sundry military posts, at which qualified voters of that county, answering to description of "volunteers and other troops, citizens of this State, etc." were stationed, an election was held for county officers, and among others, for County Treasurer of Muscogee county. From all these different places where elections were holden, and by the proper managers, regular returns were made of the votes polled. It is conceded that if the votes of soldiers in camps, regularly returned, be consolidated with the votes polled in Muscogee county, for County Treasurer, one Chaffin received a majority of the votes; and that if the votes of soldiers in camps be excluded, Bradford, the relator, received a majority, and is entitled to the office. Those votes were in fact consolidated with the votes polled in Muscogee county, and Chaffin admitted to the office. In behalf of Bradford, the relator and plaintiff in error, it is insisted that the election of County Treasurer, comes within the exception in the act, (which I have italicised) being an election, not returnable (by law) to the Executive Department. The respondents insist that it is an election so returnable; and this is the point upon which this case turns.

1. By the Act of 1830, Cobb's Digest, 236, it is made the duty of superintendents of elections held for county officers, "to return and certify to the Governor the result of the elections for that county." It is said, however, that at the time this Act was passed the County Treasurer of Muscogee county was appointed by the Justices of the Inferior Court, and not elected by the people, and that therefore there is no direction that *it* shall be certified and returned to the Governor, the Act of 1830 being applicable only to elections by the people, *then* authorized by law. To this it is replied, that the Act of 1856, (pamphlet 405), which transfers the election of this

officer for Muscogee county, to the people of that county, provides that said elections shall " be subject in all respects to the same rules that other elections for county officers are." That by the Act of 1830, the election for other county officers were required in 1856, and still are required to be returned to the Executive Department; and that, therefore, the election of County Treasurer for Muscogee county, is as much required to be returned to the Executive Department, as if it were so declared in terms by the Act of 1856. We think the reply is conclusive.

But it is further insisted, that the County Treasurer *is not* a county officer, and that, therefore, the Act of 1830 does not apply to him. It is urged that originally he was but the appointee and servant of the Inferior Court, and not entitled to a commission, and that the change in the mode of his appointment for Muscogee county, does not change his relation to the Court or the county, nor yet the nature of his employment. The position, place or office, (whatever be its proper designation) was created by a public law, though its duties and functions are restricted to the limits of a single county. What is an office? It is defined to be "that function by virtue of which a man hath some employment in the affairs of another, as of the king or of another person." Cowell. 4 Jacob's Law Dic., 433. " It is said that the word *officium* principally implies a duty, and in the next place the charge of such duty; and that it is a rule, that where one man hath to do with another's affairs against his will and without his leave, that it is an office, and he who is in it is an officer." Carth. 478, 4 Jacob's Law Dic. 433. " Officers are public or private; and it is said that any man is a public officer who hath any duty concerning the public, and he is not the less a public officer where his authority is confined to narrow limits, because it is the duty of his office and the nature of that duty which makes him a public officer, and not the extent of his authority." Carth. 479, 4 Jacob's Law Dic., 433.

2. Certainly, where an individual has been appointed or elected, in a manner prescribed by law, has a designation or

Bradford *vs.* Justices Inferior Court.

title given him by law, and exercises functions concerning the public, assigned to him by law, he must be regarded as a public officer.   It can make no difference whether he be commissioned by the Chief Executive officer with the authentication of the seal of State or not.   Where that is given it is but evidence of his title to the office.   This evidence may in some cases be of greater and in others of less solemnity.   We hold, therefore, that a County Treasurer is an officer of the county for which he is appointed or elected.

But it might be conceded, for the argument, that he is not a county officer, and still the right of volunteers and other troops, citizens of this State, and entitled to vote in his election when at home, but temporarily absent in the military service of the country, to vote, under the provisions of the Act of 1861, can be demonstrated.   That Act does not entitle them in terms to vote for public officers, or county officers, or State officers, but to vote *" at any election "* at which, if at home, they would be entitled to vote by the existing laws.   Now, whether the County Treasurer be a county officer, an agent, or a servant of the Inferior Court, the process by which he is chosen in Muscogee county, is *" an election,"* and in that election the volunteers of Muscogee county would be entitled, if at home, to vote.   Whether he be an officer, agent, or servant, according to the Act of 1856, as already shown, the returns and certificate of his election are required to be made to the Executive Department, and therefore this election is not within the exception in the Act.   Holding that the relator must fail on the merits of the case he makes, we do not find it necessary to consider the exception taken to his remedy.

Let the judgment be affirmed.