[No. 7,225—In Bank.]

## THE PEOPLE *v.* ASHBURNER.

YOSEMITE VALLEY GRANT—TRUST—CHARITY—JURISDICTION.—By the act of Congress of June 30th, 1864, the United States granted the Yosemite Valley to the State of California, and in accepting the grant the State assumed certain obligations in the nature of a trust; but the act and the statute of the State accepting the grant did not operate as a gift for charitable uses, such as may be regulated, directed, and enforced by a Court of Equity; nor can the obligations of the State be enforced by the courts of the State.

ID.— COMMISSIONERS— OFFICER—DEFINITION— TERMS OF OFFICE.—The commissioners to manage the Yosemite Valley, and the Mariposa Big Tree Grove, are mere agents of the State, and persons thus clothed with functions affecting the public, assigned to them by State laws, are *officers* of the State, and their terms of office expired four years after their appointment.

ID.—CONSTITUTIONAL LAW.—The Act of April 15th, 1880, "for the management of the Yosemite Valley, and the Mariposa Big Tree Grove," is not unconstitutional.

APPEAL from a judgment for the defendant, in the Superior Court of the County of Sacramento. DENSON, J.

The *Attorney-General*, for Appellant.

*Rhodes & Barstow*, for Respondent.

The Act of Congress of June 30th, 1864, (13 Stat. at Large, 1863-4, p. 325) together with the statute of the State accepting the grant, (Stat. 1865-6, p. 710) created a charity. (*Girard Will Case*, *Vidal* v. *Girard's Executors*, 2 How. 127; *Price* v. *Maxwell*, 28 Pa. St. 23; *Jones* v. *Williams*, Amb. 651; Boyle on Charities, 51; *McDonogh* v. *Murdoch*, 15 How. 367; *Mitford* v. *Reynolds*, 1 Phill. (Eng.) 185; Perry on Trusts, §§ 707, 30.) The State may be a trustee. (Perry on Trusts, §§ 40-1; *Mitford* v. *Reynolds*, cited *supra;* Hill on Trustees, 52; *Webb* v. *Neale*, 5 Allen, 575; *Coggeshall* v. *Pelton*, 7 Johns. Ch. 292; *Att'y-Gen.* v. *Clark*, Amb. 422; Boyle on Charities, 52-54; *McDonogh* v. *Murdoch*, cited *supra*.) The commissioners appointed under the act of Congress are not officers, but trustees. (*Inglis* v. *Trustees of Sailors' Snug Harbor*, 3 Peters, 99: *Nightingale* v. *Colbourne*, 2 Phila. 294; *New* v. *Bonaker*, Law Rep. 4 Eq. Cas. Abr. 655; *McDonogh* v. *Murdoch*, cited *supra*.) The commissioners are none the less

trustees because the title was not vested in them. (Perry on Trusts, § 308; *Osgood* v. *Franklin*, 2 Johns. Ch. 1.) The commissioners as trustees are subject to the control of the Court of Equity. (Boyle on Charities, 12–14.)

The Legislature had no power to fix the period during which the commissioners should act as such. (*Yosemite Valley Case*, 15 Wall. 94.) If the commissioners are in any sense officers, they are Federal and not State officers. (*Matter of Ramsden*, 13 How. Pr. 429; *People* v. *Sweetman*, 3 Parker Cr. R. 358.)

McKINSTRY, J. :

The complaint charges the defendant with having usurped the office of member of the Board of "Commissioners to manage the Yosemite Valley, and the Mariposa Big Tree Grove." The answer is a general denial.

The case was submitted upon the agreed statement following :

"I. Under and in pursuance of the act of Congress, entitled "An Act authorizing a grant to the State of California of the Yosemite Valley, and the land embracing the Mariposa Big Tree Grove," approved June 30th, 1864 ; and also an act of the Legislature of said State, entitled "An Act to accept the grant by the United States Government to the State of California, of the Yosemite Valley and Big Tree Grove, and to organize the Board of Commissioners, and to fully empower them to carry out the objects of the grant, and fulfill the purposes of the trust," approved April 2nd, 1866, Frederick F. Low, the Governor of said State, appointed as the commissioners provided for in said acts : Frederick Law Olmstead, Prof. J. D. Whitney, William Ashburner, I. W. Raymond, E. S. Holden, Alexander Deering, George W. Coulter, and Galen Clark.

II.—Certain of the persons so appointed as commissioners as aforesaid ceased to be or act as such commissioners by reason of their death or resignation, and other persons were duly appointed by the Governor to fill the places so becoming vacant ; the persons appointed severally accepted such appointments, and at the time of the passage of the act of the Legislature of this State, entitled, "An Act to provide for the management of the

Yosemite Valley and the Mariposa Big Tree Grove," approved April 15th, 1880, William Ashburner, I. W. Raymond, E. S. Holden, Galen Clark, Edgar Mills, Thomas Madden, Wm. H. Priest, and H. W. Cleveland, were, together with the Governor of said State, acting as such commissioners.

III.—They and each of them had been duly appointed as such commissioners by the Governor of this State, by virtue of the authority conferred upon him by the said act of Congress and said act of the Legislature of this State, first above mentioned.

IV.—Heretofore, to wit: on the 16th day of April, 1880, after the adoption of "Senate Concurrent Resolution, No. 20, relating to appointment of eight commissioners to manage the Yosemite Valley and the Mariposa Big Tree Grove," adopted February 17th, 1880 ; and the passage of the act of the Legislature of this State, entitled, "An Act to provide for the management of the Yosemite Valley and the Mariposa Big Tree Grove," approved April 15th, 1880, the Governor of said State, in pursuance of said Senate concurrent resolution, and of said act, and by virtue of the authority therein and thereby conferred upon him, appointed I. W. Raymond, J. P. Jackson, M. C. Briggs, William H. Mills, George H. Ladd, W. C. Priest, A. J. Meany, and James L. Sperry, as such commissioners ; and each of them accepted such appointment, and took, subscribed and filed an oath of office, in the manner and form prescribed by law for the officers of the government of said State.

V.—More than four years had elapsed after the appointment by the Governor of each of the persons mentioned in the first and second paragraphs above written, and before the passage of said act of the Legislature, passed April 15th, 1880.

Neither the said defendant, nor any one of the said persons last aforesaid, had been reappointed as such commissioner, after their respective appointments as aforesaid.

Each of the said commissioners so appointed on the 19th day of April, 1880, and the board composed of said commissioners, duly demanded of said William Ashburner that he surrender said office and cease to discharge the duties thereof; but the said Ashburner refused, and still refuses, to comply with such demand—the said demand having been made after the qualifica-

tion of said commissioners, and before the commencement of this action.

VI.—Said defendant has, ever since the passage of the said act last aforesaid, continued to discharge the duties of such commissioner as first aforesaid, and has during all that time claimed, and still claims, that he is by law entitled to be such commissioner, and to be a member of said Board of Commissioners as organized and existing at the time of the passage of said last mentioned act, and to exercise and discharge all the powers, authority, and duties of such commissioner, and of a member of such Board of Commissioners; he claiming and insisting that said Board of Commissioners and the members thereof continue to be and are such board, and the members thereof, notwithstanding the passage of said act, approved April 15th, 1880, and the alleged appointment by the Governor of the members of the Board of Commissioners on the 19th day of April, 1880, as mentioned in the fourth paragraph hereof.

The Act of Congress of June 30th, 1864 (13 U. S. Stats. at Large, 1863–4, p. 325), provides: "There shall be, and *is hereby granted to the State of California* the cleft or gorge in the granite peak of the Sierra Nevada Mountains, situated in the County of Mariposa, in the State aforesaid, and the headwaters of the Merced River, and known as the Yosemite Valley, with its branches," etc., "with the *stipulation,* nevertheless, *that the said State shall accept this grant with the express conditions* that the premises shall be held for *public use, resort and recreation,* shall be inalienable for all time, but leases not exceeding ten years may be granted for portions of said premises. All incomes to be derived from leases of privileges to be expended in the preservation and improvement of the property or the roads leading thereto. * * * * * The premises to be managed by the Governor of the State, with eight other commissioners, to be appointed by the executive of California, who shall receive no compensation for their services."

It will be observed that by the terms of the act of Congress the grant *to the State of California* was to take effect when the State should *accept,* with certain conditions: "With the *stipulation,* nevertheless, that the said State *shall accept this grant with the express conditions,*" etc. When the act of Congress was

passed, there was no perfected agreement with the State; the act was a proffer to the State, and was to operate a grant, provided the State should join in the stipulation that certain conditions—in the nature of conditions subsequent—should be by it assumed. It is not necessary to inquire whether by any legal proceeding, based upon a forfeiture, the land could be recovered by the Federal Government in case the State should fail to comply with the obligations by it assumed with reference to the subject of the grant, or whether the Yosemite Valley passed forever to the State, in reliance upon the pledged honor of the State that it should be preserved, dedicated, and managed as contemplated by the act of Congress. No provision of the act of the California Legislature of April 15th, 1880, has been called to our attention as being in itself a violation of any one of the conditions named in the act of Congress, or of any part of the stipulation entered into by the State.

By the first section of the Act of April 2nd, 1866, (Stat. of California, 1865-6, p. 710) the Legislature *accepted* the grant for the State "upon the conditions, reservations, and stipulations contained in said act of Congress," and thereby became bound to carry into effect the stipulation which it had entered into, and which the act of Congress had required should be entered into, as a condition to the grant becoming operative. By accepting the grant upon the stipulations contained in the act of Congress, the State assumed the duty of providing, by appropriate legislation, 1st, for inalienably preserving the premises for public use, resort, and recreation; 2nd, prohibiting leases of any portion for a longer term than ten years; 3rd, for the application of all "incomes" to the preservation or improvement of the property or roads leading thereto; 4th, authorizing the Governor to appoint eight commissioners, who, with himself, shall, without compensation, "manage" the premises.

The fact that the Legislature, on the 2nd of April, 1866, discharged its duty (by legislation with reference to the several subjects, with respect to which legislation was pledged by the acceptance of the grant) *in the same act* as that which contained the acceptance, does not affect the question we are considering.

The grant was accepted, upon the conditions, etc., and the

rest of the act may be treated as if it were a separate and subsequent law—a law which may be changed as often as the representatives of the people of the State may deem it proper; provided the stipulation or pledge of the State, given when the grant was accepted, is not violated.

There can be no doubt that, by accepting the grant, the State assumed certain obligations in the *nature* of a trust, which it would be a violation of good faith to disregard. We know of no way by which these obligations can be enforced in a State court; but, however this may be, we are quite certain that as yet no violation of the duties imposed upon the State by her acceptance of the grant has occurred.

It is urged by counsel for respondent that the act of Congress and the statute of the State created a " charity." In a larger sense, this is true, since the legislation, national and State, while placing the legal title in the State, was intended to operate as a gift to the general public use, free from " the taint of every consideration, personal, private, and selfish." But when we inquire whether the result is a *gift for charitable uses*, such as may be *regulated, directed, and enforced by a Court of Equity,* we are met by insurmountable obstacles to the conclusion that the matter is within any branch of equitable jurisdiction of which this Court can take cognizance. It is a dedication to the public, brought about by the combined action of the Federal and State Governments. The State is the trustee—if there be a trustee—but a trustee whom this Court has no power to remove. We cannot enforce any decree with respect to the mode or manner in which the State shall discharge the duties it has assumed. (Hill on Trustees, 49; Perry on Trusts, 40, 41.) The commissioners are mere agents of the State, who bear no relation (other than that borne by other citizens) to the Government of the United States, but whose duties are defined, whose powers exercised, under and by virtue of State laws alone. Persons thus clothed with functions affecting the public, assigned to them by State laws, are *officers* of the State. (*Bradford* v. *Justices' Court,* 33 Ga. 332; *Leach* v. *Cassidy,* 23 Ind. 449; *Waldo* v. *Wallace,* 12 id. 569; *Smith* v. *Mayor etc.* 37 N. Y. 518.)

The nature of the title created by the Federal and State leg-

islation must depend simply upon the act of Congress and the State statute. Upon a reference to them, we can discover but a distant analogy between the present and the cases cited in the able and ingenious brief of counsel for respondent.

In *Price* v. *Maxwell*, 28 Pa. St. 23, it was held that a devise to a *school*, where both rich and poor were taught, and religious was combined with literary and scientific instruction, was for charitable uses. *Jones* v. *Williams*, Amb. 651, was a bequest of money to be applied to the purchase of water-works for the inhabitants of a town. Held, a charitable use, void by the statute of mortmain. *McDonogh* v. *Murdoch*, 15 How. 367, determined the validity of legacies, for charities, to the cities of Baltimore and New Orleans; and held, *inter alia*, that the cities were authorized to take by the laws of Maryland and Louisiana. In *Mitford* v. *Reynolds*, 1 Phill. Ch. 105, it seems to have been assumed that a devise to the " Government of Bengal " was a devise to the Governor-General as an individual. In *Attorney-General* v. *Heelis*, 2 Sim. & Stu. 67, it was said that a fund derived wholly from assessments under an act of Parliament, and not at all from bounty, was not a charitable fund to be administered by a Court of Equity. *Webb* v. *Neale*, 5 Allen, 575, and *Coggeshall* v. *Pelton*, 7 Johns. Ch. 292, decide that certain cities were competent to be trustees. In *Inglis* v. *Trustees of Sailors' Snug Harbor*, 3 Peters, 99, it was held that a bequest to the Chancellor of the State of New York was equivalent to a designation of that officer by his proper name, and the trust was to be executed by him in his individual character. In *Nightingale* v. *Goulbourne*, 2 Phill. Ch. 594, that a bequest to the Chancellor of Exchequer was a bequest to the holder of the office.

It may be admitted that one may sometimes be charged as trustee who is clothed with a power with reference to real estate, although the legal title may not be vested in him. It is very possible that, in a proceeding brought by the State, the Yosemite commissioners might be compelled to an accounting, etc., in case of misappropriation of funds. But this would not make them any the less officers, nor could it affect the question of the power of the Legislature to provide for their removal and the appointment of other persons in their stead. The stat-

ute of April 15th, 1880, like that of April 2nd, 1866, provides for eight commissioners to be appointed by the Governor, who, with that officer, are required to *manage* the property in accordance with the stipulation entered into by the State when the grant was accepted. Inasmuch as the commissioners originally appointed were officers, their term of office expired four years after their appointment. (Const. of 1849, art. x, § 7; Const. of 1879, art. xx, § 16.)

Judgment reversed and cause remanded, with directions that the Court below enter judgment as prayed for in the complaint.

SHARPSTEIN, J., MYRICK, J., and McKEE, J., concurred.

THORNTON, J., dissented.