## HARMON & ux. versus SALMON FALLS MANUFACTURING COMPANY.

In manufacturing establishments, it is competent for the employers to introduce prudential and effective regulations to be observed by the operatives employed.

To secure regularity and faithfulness on the part of such operatives, the regulations may, in themselves, provide for a forfeiture of wages, in case of willful non-compliance.

A person entering such an establishment, as an operative, with knowledge of such a provision in its regulations, is considered to have assented to it, though he have not signed it.

Such an assent constitutes a valid contract.

No suit at the common law, nor process in equity jurisprudence, can be maintained against the employer to recover for wages, forfeited under such a contract.

That such operative had knowledge of such a provision in the regulations, may be inferred from the employers having delivered to him a printed copy of them.

When the regulations, known to the operative, provided for a forfeiture of wages, in case of his leaving the service without having given previous notice, if he would rely upon having quit by the employer's consent, or upon having fulfilled the term, for which he had contracted to labor, the onus probandi is upon him.

ON FACTS AGREED.

ASSUMPSIT, brought by Franklin L. Harmon and Almeda, his wife, for labor performed by her before marriage. She

labored for the company 18 days. In that time she wove 53 pieces at 13 cents each, amounting to $7,41. "The company, in addition allowed her, as due to her, 10 cents for board, making in the whole, $7,51, due to said Almeda." To recover that sum this suit was brought, after a demand made.

She began to labor on Sept. 27, 1847. On that day, and before the labor commenced, the company, at their counting-room, delivered to her a printed paper containing, among others, the following : —

"General Regulations."

"Any person, intending to leave the company's employ, must give notice to her or his overseer, two weeks at least previous to leaving, and continue to work till the expiration of the notice.

"Those who leave contrary to· this regulation, (cases of sickness excepted,) will not be settled with or paid, till such notice is regularly given and worked out.

"The foregoing regulations will be regarded as an express contract between the corporation and all persons in its employ ; and all who continue to work for the corporation will be considered as agreeing to the terms here stated, particularly those relating to the * * * notice of leaving."

She then proceeded to work, her name being registered for the weaving department. At the end of 18 days, she quit the service, not being sick, and without having "given or worked out" the prescribed notice.

The case was submitted to the Court for a decision according to the principles of law, with power to draw inferences, as a jury might.

*Luques*, for the plaintiffs.

The services having been performed, the plaintiffs are entitled to recover, unless precluded by force of the "General Regulations."

The plaintiffs' claim consists of two items, different in character : —

1. One is for a small sum of ten cents, admitted to be

Harmon v. Salmon Falls Manufacturing Company.

"due to her for board." So far as relates to this item, no defence is presented. For it cannot be supposed that the company's "regulations" will be offered as a defeat to such a charge. The regulation pointing out the consequences of omitting to give notice of quitting has reference and applicability only to amounts due for labor performed. For the board, then, the plaintiffs are clearly entitled to recover.

2. The company claims that that regulation, of itself, constitutes an *express contract* with such laborers as had been apprized of it.

But there can be no valid contract, where there is no *certainty*. The only period of time mentioned in the regulation is the two weeks. If that constituted a contract, it could not reach beyond that period. Where labor continued more than two weeks, there would be an indebtment for the excess.

But the regulation constituted no contract, even for the two weeks, because there was no *mutuality*. The company were left at full liberty to dismiss the laborer at any moment. Suppose a laborer to have been dismissed, would the company have been bound to pay for two weeks services after the dismissal?

The regulation is silent as to its duration. It was too indefinite as to the things to be done, and the payments to be made under it, and can, therefore, have no validity.

It does not appear that Almeda quit without the consent of the company, or that she had not labored as long as she agreed to. There is no clause of forfeiture in the instrument, nor is the money, *admitted* by the company to be due to her, claimed by them as a forfeiture.

Again, it is not even pretended that the company suffered any damage by want of notice of quitting.

The plaintiffs present, as exactly in point, the cases of *Hunt* v. *The Otis Company,* 4 Metc. 464; *Britton* v. *Turner,* 6 N. H. 481; and *Fuller* v. *Brown,* 11 Metc. 440.

*J. N. Goodwin,* for the defendants.

This case, though trifling as to the amount immediately in controversy, involves principles of deep importance, especially

to those, who are conducting the business of our large manufacturing establishments.

Almeda's work was commenced and continued with a full knowledge on her part, of the terms of the General Regulations. One of their provisions was, that the regulations should become an express contract with each laborer. She then, by entering upon the service, with such knowledge, recognized and adopted the regulations as a part of her contract, though she did not subscribe them. *Patcher* v. *Swift*, 6 Washburn, 292 ; *Whitesell* v. *Crane,* 8 Watts & Sargent, 369 ; *Hubbard* v. *Coolidge*, 1 Metc. 93.

Almeda's earnings, including the allowance for board, came to $7,51. The allowance for board was, equally with the thirteen cents per piece, a part of the compensation for her labor.

For the company was to find her board or pay an equivalent in money. Those earnings she forfeited by quitting the company's employ, without having given the stipulated notice.

The plaintiffs' counsel insists that the "regulation" on which we rely, was ineffective, because destitute of the *certainty*, and of the *definiteness* requisite in a contract. But this position is unsound, and is fully repelled by the case, *Hunt* v. *The Otis Company*, cited by himself.

The company, from the nature of its business, cannot beforehand fix more exactly the time of each operative's services.

The stipulation in the regulations, as we respectfully submit, became a binding contract on the part of the laborer, such a contract as is indispensably necessary for protection against "strikes" and such losses as must almost certainly ensue from a sudden cessation of operatives to carry on the machinery.

A compliance with the stipulation, contained in the " General Regulations," is a condition precedent to a recovery. A performance must be averred and proved. Chitty on Con. 7 Am. ed. 737, 738.

The plaintiffs claim to recover, because the case does not show that Almeda left without the consent of the company, or that she had not worked out the time for which she agreed.

If such be offered as an excuse for quitting, the *onus probandi* is upon the plaintiffs.

But our defence is also met by the position, that the "regulation" could not take effect, as a contract, for want of mutuality.

It is not, however, necessary that similar acts should be stipulated for by both parties. A stipulation for an equivalent constitutes sufficient consideration and mutuality. *Fuller* v. *Brown*, 11 Metc. 440. That there was a forfeiture of the earnings, though the word "forfeiture" is not used in the instrument, we cite *Henessey* v. *Farrell*, 4 Cush. 267.

*Luques*, in reply.

There is no ground for considering the contract, if one was created by a knowledge of the Regulations, to have been the contract of *hiring*. The contract of hiring was an earlier and a separate one. The Regulation contract, if any, was wholly an independent one. It might perhaps be the foundation of a suit, but most clearly could not defeat the action brought upon the contract of hiring. *Britton* v. *Turner*, 6 N. H. 48; *Hartwell* v. *Jewett*, 9 N. H. 249; *Dyer* v. *Jones*, 8 Vermont, 205; *Gilman* v. *Hall*, 11 Vermont, 210; *Booth* v. *Tyson*, 15 Vermont, 515.

But the notice of the regulation never rose so high as to become a contract. To do that, the laborer must have subscribed it. *Hunt* v. *Otis Co.* above cited.

There could be no forfeiture, for that word is not used in the instrument.

The mere handing of the paper, all unexplained, to the laborer, without intimation that it was to become a contract, was viewed as merely directory. It was received as a mere intimation of the company's wishes, as to the hours of work and mode of behavior; and was probably never read. The labor has been performed. The defendants have had the

benefit of it. And it is trusted that their injustice, in with-holding the pay, will receive no sanction from this Court.

SHEPLEY, C. J. — The case is presented for decision upon facts agreed ; the amount claimed is small. The principles involved are alleged to be of importance. It is not difficult to perceive, that they may be so. A corporation or an individual employing several hundreds of persons, may have contracted to furnish large quantities of manufactured goods for sale or exportation, at certain times ; and if the persons employed to perform the labor, may in violation of their agreements, and without loss of wages leave the machinery at rest until other persons can be procured to take their places, no confidence can be reposed in the manufacturer's ability to fulfill his contracts, and he can obtain no indemnity for losses occasioned by the fault of others. To offer to such an employer the right to have a legal contest, and the chance thereby to recover damages for the injury he may be able to prove that he has suffered by a violation of each laborer's contract, is little less to him than solemn mockery. The manufacturer and all his laborers would know, that the trouble and expense of such suits would prevent any attempt in that mode to obtain redress. The only valuable protection, which the manufacturer can provide against such liability to loss, and against, what are in these days denominated "strikes," is to make an agreement with his laborers, that if they willfully leave their machines and his employment without previous notice, all, or a certain amount of wages that may be due to them shall be forfeited. While courts of justice should not attempt by construction to make such agreements between the employer and those employed, they should not shrink from the duty of causing them, when fairly made, to be honestly and faithfully executed ; or attempt by construction to aid a party to avoid the penalty to which he has agreed to expose himself for a willful violation of his contract.

The rule of law, that one who makes a contract, must perform it before he can maintain an action founded upon it, un-

less he can present a legal excuse, is too important for the prosperity of business, for the security of honest dealings, and for the maintenance of good order in the community, to be lightly regarded. If there has at any time appeared to be a relaxation of it, that has long since ceased to be so in this state.

One who will willfully violate a contract, and thereby expose himself to an agreed penalty or forfeiture, cannot expect to obtain relief by the rules of moral right and wrong, or by those of equity jurisprudence or the common law.

There is indeed a class of cases, in which a party who has violated his contract, has been permitted to make it the foundation of a suit to recover compensation for services performed by virtue of it. These are cases, so far as they rest upon sound legal principles, in which there has been no willful violation or in which there has been a waiver of that performance, or other legal excuse.

It appears to have been supposed by some, without just reason, that the cases of *Hunt* v. *The Otis Company*, 4 Met. 464, and of *Fuller* v. *Brown*, 11 Met. 440, exhibited a relaxation of the law affirmed in the cases of *Stark* v. *Parker*, 2 Pick. 267, and of *Olmstead* v. *Beale*, 19 Pick. 528. The case of *Hunt* v. *The Otis Company*, appears to have been decided upon the ground, that the regulation of the company " did not contain in its terms the stipulation, that in case of quitting without giving the four weeks notice, the wages accrued should be forfeited." While it is said, " had this been the case the plaintiff would then fall within the penalty." It is also stated if the construction then given to the regulation should produce injurious effects to the defendants, " they have only to enlarge their rule by adding to it a clause of forfeiture of wages accrued, and a requisition that operatives entering into their service shall sign it." This last remark is relied upon as deciding that the regulations of a company will not be binding upon those employed, unless they signify their assent by subscribing to them. That this could not have been the intention of the Court is quite apparent, for the whole case rests upon the position, that the plaintiff was bound by the regula-

tions of the company not subscribed by him. If he were not so bound, the regulations, whatever might have been their true construction, could have presented no defence, and the elaborate opinion to ascertain and enforce the adopted construction, would have been an useless production.

That a person may be bound by a regulation, stipulation, or notice, to which he has not subscribed his name is shown by many decided cases; — by insurance cases, in which the party assured has been uniformly held to be bound by the stipulations contained in his policy; by cases against common carriers, when their notices have been held to operate upon the rights of employers, who have knowledge of them; and by a variety of other cases.

The case of *Fuller* v. *Brown*, so far as it respects the point now under consideration, only decides, that a stipulation to give four weeks notice before leaving and to work four weeks afterwards and then receive his pay would not be violated if he left by reason of sickness.

It will be in season to consider whether, the latter clause of the instructions, stating that he " was entitled to recover his wages without deduction for damages," and to which exceptions were taken, can command assent, when it shall be properly presented. *Batterman* v. *Pierce*, 3 Hill. 174.

The argument for the plaintiffs insists, that the regulations of the company did not become a part of the contract between it and the female plaintiff. It is a fact agreed, that a printed paper containing the regulations of the company was delivered to her before she commenced to work. In these regulations were the following clauses. " Any person intending to leave the company's employment, must give notice to her or his overseer two weeks at least previous to leaving, and continue to work until the expiration of the notice. Those who leave contrary to this regulation, (cases of sickness excepted,) will not be settled with or paid till such notice is regularly given and worked out. The foregoing regulations will be regarded as an express contract between the corporation and all persons in its employ; and all who continue to work for the

corporation will be considered as agreeing to the terms here stated, particularly those relating to the hours of labor and notice of leaving."

The female plaintiff by continuing to work for the company after these regulations were delivered to her, must be considered as having agreed to them, and therefore as having expressly agreed, that she was not to be paid till the required notice had been regularly given and worked out. She cannot now avoid the effect of that agreement and maintain an action without proof of a compliance with its terms. It is agreed that she "did not give or work out the notice required by said paper and that she was not sick.". It is said that the regulations do not contain any clause of forfeiture. The word forfeiture is not found in them, nor was it necessary. An agreement, that payment shall not be made without a compliance, is equally effectual as a bar to the action. It is also said, that it does not appear, that she did not leave by consent of the company, or that she did not work as long as she agreed to. It is not agreed or proved, that she did leave by its consent, or that she had agreed to work for a time specified, which had expired ; and the burden of proof rests upon her to shew that she left by permission, or that there was a special contract respecting the time during which she was to continue to labor.

The argument asserts, that the regulations were not binding upon her, because the contract was not mutual ; that the company could discharge her without giving her any notice.

The position is quite novel, that a contract will not be valid unless each party assumes precisely the same obligations.

It is further urged, if there must be a forfeiture of wages, it can extend to no more than the wages of two weeks. The contract contained in the regulations will not admit such a construction. There is no limitation of time, during which she was not to be settled with or paid, and the Court is not at liberty to insert one. It was undoubtedly intended to operate upon all the wages earned subsequent to the last settlement, and such is its necessary effect.

It is moreover earnestly urged that the plaintiffs may re-

cover the ten cents allowed for board. It appears from the agreed statement, that she was to receive "thirteen cents per piece" for weaving, and that "said company in addition allowed said Almeda ten cents for board.", The sum allowed for board appears therefore to have been allowed as payment in part for her services for weaving.    *Plaintiffs nonsuit.*

TENNEY, WELLS, HOWARD and APPLETON, J. J., concurred.