Andrews, J.
The relator is property clerk and assistant paymaster of the department of parks of the city of New York. He claims to be an employee of the city, earning wages, and therefore entitled to the benefits of the act, chapter 388 of the laws of 1890, known as “ The Weekly Payment Law,” and applies for a mandamus requiring the respondent, who is the comptroller of the city, to pay his salary weekly.
The statute in question provides, among other things, that every municipal corporation in this State shall pay weekly each and every employee the wages earned by such employee to within six days of the date of such payment.
There are no disputed questions of fact involved in this matter, and the sole question of law to be determined is, whether the relator is an “ employee ” of the city, “ earning wages ” within the meaning of the statute. After a careful consideration of the matter, I have reached the conclusion that the statute does not apply to the relator, and that the application should therefore be denied. If the relator is a public officer he certainly cannot be considered an “ employee ”* of the city, and there is some ground for holding that he is such an officer.
*370 In Costello v. Mayor (63 N. Y. 48), the plaintiff had been appointed an additional clerk to the board of aldermen, to be known as the general clerk, and whose duties were to index the proceedings of the board. The court of appeals held that he was a public officer. In People ex rel. Satterlee v. Board of Police (75 N. Y. 38), it was held that a police surgeon was a public officer. In Roland v. Mayor (12 J. & S. 559; s. c., 83 N. Y. 372), it was held that the plaintiff, who had been appointed by the board of supervisors an attendant upon the supreme court, was a public officer. In Collins v. Mayor (3 Hun, 680), it was held that the plaintiff, who was •eighth assistant clerk to the board of aldermen, was also a public officer.
In Roland v. Mayor, supra, the court said : “ Whether we look into the dictionary of our language, the terms of politics, or. the diction of common life, we find that whoever has a public charge or employment, or even a particular •employment affecting the public, is said to hold, or to be, in office.
The relator has a public charge or employment affecting ■ the public, and he performs independent duties imposed by law upon the park department. Under the above decision, and others which might be referred to, it would seem that .he is to be considered a public officer.
Assuming, however, that the relator is not such an officer, it does not necessarily follow that he is an “ employee ” within the meaning of the statute.
In People ex rel. Satterlee, supra, the court said: “ Employees are usually considered as embracing laborers and servants and those occupying inferior positions.”
■ The relator holds the responsible position of the property •clerk and assistant paymaster. He has charge of valuable property belonging to the city, and disburses moneys and receives an annual salary of $3,000. He is not a laborer or servant, and the term “ employee,” as ordinarily used, would not include a person holding such a position as he does.
But, even assuming that the relator is not a public officer, *371 and is an “ employee ” within the meaning of the statute, he is not an “ employee ” earning “wages)” because his compensation is not fixed by the day, week, or month, but by the year. He does not receive “wages,” but is paid a large annual salary.
It is true that in a certain sense it may be said that the word “ wages ” includes the salaries of public officers and clerks, and the fees of lawyers, physicians and other professional men; but that is not the ordinary meaning of the word, and it is an elementary rule that “ the words of a statute are to be taken in their ordinary and familiar signification and import, and regard is to be had to their general and proper use ” (Dwarris on Statutes, p. 193).
The distinction between “ salary ” and “ wages ” is recognised by all lexicographers, by the courts in many adjudicated cases, and by the legislatures of this and other States, and by congress, in innumerable statutes. Webster defines salary as follows : “ The recompense or consideration stipulated to be paid to a person for services, usually a fixed sum to be paid by the year, as to governors, magistrates, settled clergymen, instructors of seminaries, or other officers, civil or ecclesiastical. When wages are stated or stipulated by the month, week or day, we do not call the compensation salary, but pay or wages, as in the case of military men and laborers.” He defines wages as follows: “ Hire; reward ; that which is paid or stipulated for services, but chiefly for services for manual labor, or for military or naval services. We speak of 6servants’ wages,’ (laborers’ wages’ or soldiers’ wagesf but we never apply the word to the rewards given to men in office, which are called fees or salary.” Abbott’s Law Dictionary defines “ wages ” as follows : “ The agreed compensation for services rendered in a menial or subordinate capacity.” The same work defines “ salary ” as “ A reward or compensation for services performed. It is usually applied to the reward paid to a public officer for the performance of his official duties.” Burrill’s Law Dictionary defines “ salary ” as “ An annual compensation for ser *372 vices rendered ; a fixed sum to be paid by the year for services.” Worcester, referring to “ wages,” says : “In ordinary language the term wages is usually employed to distinguish the sums paid to persons hired to perform menial labor.” Winfield defines “ salary ” as: “ The per annum compensation to men in official and some other situations.” The same authority defines “ wages ” as follows : “ The word £ wages ’ means the compensation paid to a hired person for his services. This compensation to the laborer may be a specified sum for a given time of service or a fixed sum for a specified work: that is, payment may he made by the job.”
The same distinction between “ salary ” and “ wages ” is to be found in many cases, in which the courts have been called upon to construe the statutes containing those words. In McClellan v. Young (21 Am. Rep. p. 276), McCay, J., in passing upon the question as to the liability of a municipal corporation to be garnished for the “ salaries ” of its' officers, said : “ The act evidently contemplates persons who ■ have wages due them, and whose ‘wages’ were exempted, from garnishment under previous acts. The ‘ salary ’ of a public officer is in no fair sense of the word ‘ wages.’ Such salaries were not exempt under acts exempting wages.” It was held in S. & N. A. R. R. v. Falkner (49 Ala. 115), that the salary of a president of a railway company was not exempt from garnishment. The court said : “ The president of a railroad company cannot be said to be a laborer or employee within the meaning of this law. The term wages, indicates inconsiderable pay, without including salary, which is suggestive of larger compensation for personal services.. But its application to laborers and employees certainly conveys the idea of a subordinate occupation, which is not very remunerative ; one of not much independent responsibility but rather subject to immediate supervision.” In Cowdin v. Huff 10 Ind. 83) the distinction between “ salary ” and “ wages ” was recognized, and the definitions of those words above quoted from Winfield were given by the court; and. *373 ' in many other cases decided by the American courts similar definitions are to be found.
The English courts have also recognized the same dis-. tinction. In Gordon v. Jenks (L. R. 9 Q. B. D. p. 45), the court said : £< The term £ wages ’ is not applied to the remain eration of a high or important officer of the State, or of a country, for instance, but to that of domestic servants, laborers and persons of a similar description.”
I have not been referred to any case, and I believe none can be found, in which the word ££ wages ” has been held to include “ salaryin fact all the cases hold directly the ■contrary.
The same distinction between the “ salaries ” of officers and clerks and the ££ wages ” of laborers, and others holding subordinate positions, is to be found in many sections of the law known as the ££ Consolidation Act ” (chap. 410 of the Laws of 1882) and in numerous other statutes of this and other States, and in acts of Congress. Whenever a legislative body is dealing with the compensation to be made to officers and clerks, as well as laborers, it invariably uses the word “ salary ” as well as the word “ wagesand while the words ££ allowance ” and '££ compensation ” are sometimes used instead of u salary ” in reference to officers and clerks, no instance can be found in which the compensation of ■officers or clerks is called ££ wages.”
It must be presumed that the legislature of 1890 was aware of the distinction which had been made between the words ££ salaries ” and ££ wages ” by lexicographers, courts and other legislative bodies, and that if it had been intendéd that persons receiving annual “ salaries ” should be covered by the statute, the word “ salary ” as well as ££ wages ” would have been used.
There are several other provisions of the statute which show conclusively that the legislature did not intend to provide for the weekly payment of persons receiving salaries. .If the relator is a public officer, and the act applies to him, .then it applies to the heads of all departments of the city. *374 government and their deputies. If the relator is not a public officer, but is to be regarded as an employee, and the act-applies to him, it must also apply to many other persons in the various departments of the city government; and the statute contains a number of provisions and expressions-which are wholly inapplicable to public officers or clerks. Among such provisions and expressions are those which refer to the “ regular place of labor of the employee ” and “ the wages earned by him the provision forbidding the assignment of the future wages of an “ employee ” to the corporation, from whom such wages are to become due also the provision authorizing the factory inspectors of the State to maintain actions to recover the penalties imposed by the act for a non-compliance with its provisions. The officers and clerks of the municipality cannot in any proper-sense be said to have “ a regular place of labor they perform their respective duties in offices contained in various public buildings.
Again, “ wages earned ” is an apt expression in regard' to laborers who are only entitled to pay for services actually rendered, but is entirely inappropriate when used concerning-public officers or clerks who receive annual salaries, which are not due until the expiration of the year, and are entitled to be paid so long as they hold their offices, or places, without regard to the services rendered.
Moreover, an “ employee ” has a legal right to assign his-future wages; but a public officer cannot lawfully assign his-future “ salary ” (Bliss v. Lawrence, 58 N. Y. 442). Section 2 of the statute assumes that “ wages ” of “ employees ” are legally assignable, but makes the assignment invalid' if made-to the corporation, or any one acting in its behalf. The legislature' must be presumed to have known that the court of last resort in this State had decided that a public officer could not assign his future “ salary,” and certainly would not have inserted such a provision if it had been intended that the word “ employee ” should include public-officers.
*375 The provision that the penalties imposed by the act shall be sued for by the factory inspectors, is strong evidence that neither officers or clerks are within the purvieu of the statute. It is the duty of the factory inspectors to look after the interests of the operatives in factories. It is not to be supposed that the legislature would have devolved upon these officers the duty of protecting the interests of the officers and clerks of all the cities in this State.
Again, in the act (chap. 410 of the Laws of 1882), which was a consolidation of the statutes relating to the city of Hew York, the same distinction between “ salaries55 and “ wages” is frequently made ; and it is provided that some salaries shall be paid monthly, some quarterly, and that in all other cases the comptroller of the city shall prescribe the manner in which salaries shall be drawn.
These provisions of law have not been expressly repealed by the legislature, and local and special laws are not repealed by a general law unless the intent to repeal is entirely clear (Matter of Evergreen, 47 N. Y. 216; Matter of Central Park, 50 Id. 493; People v. Quigg, 59 Id. 83; People v. Supervisors, 73 Id. 173; McKenna v. Edmunson, 91 Id. 231; Mangan v. Brooklyn, 98 Id. 585; Weiler v. Newbach, 114 Id. 36).
If the legislature in passing the weekly payment law had intended to repeal all such provisions of the Consolidation Act, and to provide that the salaries of the officers and clerks-of this city should be paid weekly, it would not have merely spoken of the “ wages ” of “ employees,” but it would at least have done as all previous legislatures have done, when enacting laws relating to the compensation of officers and clerks, and have used the word “ salary ” as well as “ wages,’’ and the words “officers” and “clerks” as well as “employees. ”
Lastly, without attempting to express any opinion as to-whether the legislature ought to pass a law providing for the weekly payment of such salaries, it is very obvious that there are many reasons why laborers, and others, receiving *376 wages, as that term is ordinarily understood, from private and municipal corporations, ought to be paid weekly, which do not apply to the officers and clerks of such corporations) who receive annual salaries.
The application for a mandamus will be denied, but without costs.
Note oh the Legal Interpretatioh of the Words “Clerk,” “Sebvaht, “Laborer,” “Officer,” ahd the like, ahd “Wages” ahd “Salary.”
One engaged in manual labor by the day under the direction of his employer for daily compensation is a “ servant,” and his compensation is “ wages.” As servant he does not represent his employer, and is in no sense an agent; and is not vested with discretion as to the mode of performing his duties.
One engaged in mental services, such as those of a professional character, and representing his employer in matters within the scope of his service, has a discretion in the manner of performing his duties, for his exercise of which discretion in which his employer may be liable to third persons; he is not a “servant,” but, if in private employment, is an “agent” or “ attorney ;” and his compensation is not wages, but if computed by periods of time is salary.
Between these two extremes there is every variety of relation partaking in a greater or less degree of the qualities of both. In legal conception the categories are distinct. In actual affairs they are the opposite ends of a single scale, which runs by degrees from low to high, with no point where we can accurately say low ends and high begins.
Hence the broad field for contention when we are called on to say whether some of these intermediate degrees are governed by the law of master and servant, or by the law of principal and agent.
A copyist, for instance, is engaged in a manual employment, and, if purely and simply a copyist, he is, whether engaged by time or piece, in the legal category of servant, and his pay is wages. A typewriter or stenographer is by very common usage employed not merely in manual service, but as in some sense the amanuensis and representative of the employer; and in so far as this is the case the relation includes something more than that of master and servant, and the compensation, if computed by periods of time rather than by hours of work, is not improperly called salary.
A confidential book-keeper, or a managing cashier stands still further removed from the category of legal servant, and nearer that of legal agent. A traveling salesman usually is *377 in the legal category of agent; but, as the contract is commonly made, his relation includes something of that of master and servant.
The sort of question is presented in its sharpest form, as a verbal rather than a legal question, when we are called on to say whom the terms “servant," “laborer," “agent," “officer," •“ clerk," and the like, are to be understood as including and whom excluding, where they are used without direct explanation in a legal instrument.
The point of the first importance to be considered is in what context is the word used. The notes of diverse cases below will show how often the sense of the word is determined for it by the connection in which it stands.
Next, attention should be given to one or two points that have not been sufficiently noticed in the decisions. Wages are usually fixed with reference to hours actually employed in labor or work actually done. Salary is usually computed with reference to considerable divisions of time not made up of working hours, that is, to periods of life rather than hours of labor, and never with reference to the amount of work done. If a person on a salary gets compensation for “ piece work," it is by an additional sum usually called “ commission."
Again, the vogue of the word “ clerk," in the common language of the country, arises from the fact that it implies something of the mental function which -characterizes professional vocations, and distinguishes the position from that of servant, combined with something of the personal subordination involved in the relation of master and servant. The term is not inappropriate to such an office as that of clerk of the arrears or clerk of the general assembly, the compensation for which would be properly called salaries. But it is none the less appropriate to say that a man is “ clerking it," meaning that he is in law the servant of another, though not engaged in manual labor.
In People v. City of Buffalo, N. Y. Supm. Ct. Oct. 1890, probably to appear in 58 Hun, the same conclusion was reached as in the case in the text.

Notes of Oases.

The following cases additional to those stated in the opinion in the ■text further elucidate the subject.
I. Oases arising under statutes relating to officers.
II. Oases of legal preference or exemption.
III. Oases of corporator's individual liability.
IV. Mechanic's lien cases.
V. Gases arising on contracts.
*378 I. Oases arising under statutes relating to officers.
1. Office.~\ The phrase “ now in office,” as employed in L. 1869, c. 876, § 18, providing that “ the common council of the city of New York are hereby prohibited from creating any new office or department, or increasing the salary of those “now in office,” or their successors, except as provided by acts passed by the legislature,—held, to mean “ public office,” and not applicable to a messenger to the president of' the board of aldermen, on the ground that there was no service in any “ official ” capacity. Smith v. Mayor, etc. of N. Y., 4 Hun, 645.
2. The term “ office,” as employed in L. 1873, c. 355, § 114, does-not refer to the position of a landscape architect employed by the department of public parks. The court said: “An ‘office’ has been defined to be a right to exercise a public function or employment, and to take the fees and emoluments belonging to it. An officer is one-who is lawfully invested with an office. [Citing Bacon's Abridgment, vol. 7, title Office and Officer, p. 279, ed. of 1869 ; Bom. Law Die.] The idea of an officer clearly embraces the idea of tenure, duration, fees or emoluments and powers as well as that of duty.” Olmstead v. Mayor, etc. of N. Y., 42 Super. Ct. 487.
8. Public officer\. Under the Georgia Statute (Act of 1830, Cobb's Digest, 236), requiring the election of county “ officers ” to be returned to the executive department, the county treasurer is an “ officer,” within the meaning of the statute. The court, in the opinion, said: “ Where an individual has been appointed or elected, in a manner prescribed by law, has a designation or title given him by law, and exercises ■ functions concerning the public, assigned to him by law, he must be regarded as a public officer.” Bradford v. Justices Inferior Court, 33 Ga. 336.
4. As the terms “ office or public trust ” are employed in art. 6, §" 1, of the Constitution of 1822, providing that a particular oath and no-other shall be required as a necessary qualification, they do not include the office of an attorney and counsellor. The court said: “Lexicographers generally define “ office ” to mean “ public employment,” and. I apprehend its legal meaning to be an employment on behalf of the government, in any station or public trust, not merely transient, occasional, or incidental. In common parlance the term officer has a more-general signification. Thus we say, the office of executor, or guardian, or the office of a friend. In my judgment, an attorney or counsellor does not hold an office but exercises a privilege or franchise.” In re Attorneys, 20 Johns. 492.
5. Public officer.] A crier of the supreme court, appointed pursuant to L. 1865, c. 296, is a public officer within the Const, of 1875, art. III,,. *379 § 18, which prohibits legislative enactments in a private or local bill “ creating, increasing or decreasing fees, percentages on allowances or allowances of public officers during the term for which said officers are elected or appointed. Ricketts v. Mayor, etc. of New York, 67 How. Pr. 321.
6. In an action against the city attorney of Poughkeepsie to compel him to accept taxes without a fee (L. 1882, c. 344) it was claimed that he was not a “ public officer ” under the Constitution, art. 3, § 18. The court held otherwise [citing Rawland v. Mayor, 83 N. Y. 372], People ex rel. Gass v. Lee, 28 Hun, 471.
7. The issuing of a commission to a person, empowering him to act as a. surrogate is not an “ appointment to public office ” within the prohibition mentioned in art. 6, § 8, of the Constitution of 1846, forbidding “ judges of the court of appeals and justices of the supreme court from exercising any power of appointment to public office.” The court said: The term “ office ” has a very general signification, and is defined to be that function by virtue whereof a person has some employment in the affairs of another; and it may be public, or private, or quasi public, as exercised under public authority, but yet affecting only the affairs of particular individuals. The presidency of a bank is spoken of as an office, and a trustee of a private trust is, in ordinary parlance, said to hold the office of trustee ; and the term office is applied to an executor or guardian, etc. A referee for the trial and decision of actions, is an officer exercising judicial powers under public authority.” .... But they are not “ public officers,” within the inhibition of the Constition. . . . The trust they exercise and the duties they perform are “transient and occasional.” They are not called upon to take the constitutional oath of office, and are not entitled to the emoluments of the office, except such as grow out of and pertain to the duties actually performed. . . . When “ public ” is the prefix of “ officer,” the definition is very apt, and clearly and with precision marks the limit of the constitutional prohibition. . . . “ Public officer,” as used in the Constitution, has respect to a permanent trust to be exercised in behalf of the government. ... It means a right to exercise generally, and in all proper cases, the functions of a public trust or employment, and to receive the fees and emoluments belonging to it, and to hold the place and perform the duty for the term and by the terms prescribed by •law. Matter of Hathaway, 71 N. Y. 238.
8. Under an appropriation bill giving §20,000 to purchase certain relics of George Washington, the appointment of judge of the court of appeals to administer the fund, is not an appointment to an “ office of public trust ” within the meaning of the Const, art. 6, § 10, pro *380 hibiting judges of the court from holding any other office. The court say: “ It is very plain that the doing of such an act, a single act like this, is not within the meaning of the constitutional prohibition against “holding any other office or public trust.” People ex rel. Washington v. Nichols, 52 N. Y. 478.
9. A superintendent of canals, appointed by a canal board as authorized by L. 1857, c. 105, is a public officer, invested with the powers ■. and subject to the liabilities of such officer. The court said : “I conclude, that the superintendent was a public officer, because he was entrusted with the public duty of the management, care and control of the canals of this State, or a portion of them, and was entrusted with the protection of its structures, with the power of directing the movements of those engaged in their navigation, and with power to bring -suits in behalf of the State.” Robinson v. Chamberlain, 34 N. Y. 389. {The court cites a number of authorities in support of this position.]
10. The keeper of the Albany county penitentiary, being designated in the penitentiary laws as an “ officer,” and holding a position there designated as an “ office,” and the institution, a public institution, is a public officer, within section 124 of the Code, which enacts that actions , against public officers for acts done by virtue of their office, shall be brought in particular counties. Porter v. Pilsbury, 11 How. Pr. 240.
12. Employee.] The Act of Congress passed February, 1867 (14 Stat. L. p. 569), giving additional compensation to certain “employees ” in the civil service of the United States,—Meld, to apply to a laborer in the public grounds in Washington. The court said: “ A person engaged in the performance of the proper duties of an office, is an “ employee” in the office, whether his particular duties are carried on within or without the walls of the building in which the chief officer usually transacts his business. The word “office,” as usual in the joint resolution under consideration, refers to the functions to be performed, not to the place wffiere they are performed.” Stone v. United States, 3 Ct. of Claims, 260.
18. Employee and officer distinguished.] “ The distinction is plainly taken between a person acting as a ‘ servant1 or 1 employee,’ who does not discharge independent duties, but acts by direction of others, and an 4 officer ’ empowered to act in the discharge of a duty, or trust, under obligations imposed by the sanctions and restraints of legal authority in official life.” . . “ A servant or employee receives no certificate of appointment, takes no oath for the faithful performance of duties, has no term or tenure of office, discharges no duties, and exercises no powers depending directly upon the authority of law.” Olmstead v. Mayor, etc. of N. Y., 42 Super. Ct. 481.
*381 14. OlerTc.] As employed in L. 1873, c. 336, § 28, (Act re-organizing the local government of the city of New York) which provides that “the heads of all departments (except, as otherwise herein specifically provided) shall have power to appoint and remove all chiefs of bureaus (except the chamberlain), as also all clerks, officers, employees, etc., does not include a “surveyor in the bureau of combustibles” or an “ assistant to the fire marshal in the fire department ’’ appointed under L. 1873, c. 335, § 70. The court said: “A resort to lexicographers, will not aid us in determining the meaning of the word ‘ clerk ’ as used in the statute. It is enough that it was used in its popular sense, as-denoting one whose duties are clerical, and they may be very various.” . . . “‘Clerk’does not include every employee and subordinate of the department.” ... “A clerk in office is defined to be a person employed in an office, public or private, for keeping records or accounts, whose duty is to write or register in proper form, the transactions of the tribunal or body to which he belongs (Bouvier's Law Die.). This is the common use of the word at this day, and in that sense it was used by the legislature.” People ex rel. Sims v. Fire Commissioners, 73 N. Y. 437.
15. Salm'y.] Under the Constitution of Alabama, art. V., § 19, which declares that certain officers shall receive for their services a compensation to be established by law, the phrase “ compensation established by law,” does not apply to the fees and allowances made to sheriffs. The court said: “ As to officers having salaries, the rule is believed to be universal that their compensation is established, “ decreed by authority, and for permanence,” and that such salaries are paid to them at proper times.” Dane v. Smith, 54 Ala. 49.
10. The term “ salary,” as employed in the Constitution of Pennsylvania, art. II., § 8,—which provides that “ the members of the general assembly shall receive such salary and mileage for regular and special sessions as shall be fixed by law, and no other compensation whatever whether for service upon committee or otherwise. No member of either house shall, during the term for which he may have been elected, receive any increase of salary or mileage under any law passed during such term,—" held, to be synonymous with wages, and to mean “ a sum of money periodically paid for services rendered so that an act of the legislature giving additional compensation to members of the general assembly is not in conflict therewith. The court in the opinion says : “ How can we say that the people in adopting the Constitution gave the word “ salary ” a more restricted meaning. It is-said, and the stress of the argument seems to be here, that we are to enquire, not as to the proper meaning of the word, but as to the sense' *382 it has received in popular use. We have shown that this is a just and sound rule, to sustain a grant of power, but not to limit and restrict it .... The truth is, and this the lexicographers seem to hold, that if there is any difference in the popular sense between “ salary ” and “ wages,” it is only in the application of them to more or less honorable services. A farmer pays his farm hands, in common speech, wages —whether by the day, the week, the harvest, or the year. If for any reason he has occasion to employ an overseer, his compensation, no matter how measured, is called a salary. An ironmaster pays his workman wages, his manager receives a salary. A merchant pays wages to his servant who sweeps the floor, makes the fire and runs his errands, but he compensates his salesman or clerk by a salary.” Commonwealth ex rel. Wolfe v. Butler, 99 Pa. 542.
17. Under L. 1870, c. 382, § 3,—providing that “the board of supervisors of the county of New York are hereby prohibited from creating any new office or department, or increasing the salaries of those now in office or their successors, ”—a resolution of the board increasing the compensation of an attendant upon the supreme court, whose previous compensation had been fixed by the board at $1,200 per annum, was held illegal and void. The court said: “He” (said attendant) “ did receive a salary—for that is only another word for compensation stipulated to be paid for services—annual or periodical pay. His mode of recompense satisfied our term of the Statute. Rowland v. Mayor, etc. of New York, 83 N. Y. 372.
18. “Salary” “wages," “fees."~\ In Cowden v. Huff, 10 Ind. 85, where a question as to the validity of certain sections of the statute graduating the salaries of the judges of the court of common pleas arose, the court, in emphasizing the necessity, for uniformity in the compensation, said: “There are now, and were, at the adoption of our constitution, at least three modes in use of compensating persons engaged in the public service, viz. : fees, salaries and wages. These modes are all different, each from the other; and the difference between them has been immemorially well understood. Pees are compensation for particular acts or' services, as the fees of clerks, sheriffs, lawyers, physicians, etc. Wages are the compensation paid, or to be paid, for services by the day, week, etc., as of laborers, commissioners, etc. Salaries are the per annum compensation to men in official and some other situations. The word salary is derived from solarium, which is from the word sal, salt being an article in which the Roman soldiers were paid.” See [the dictionaries of] Richardson, Webster, Bouvierand Wharton.
*383 II. Oases of legal preference or exemption.
19. “ Employees, operatives and laborers,” as the terms are employed in L. 1885, c. 376, giving preference to those classes upon the appointment of a receiver, do not include a superintendent and an attorney of the corporation. (From the opinion): “This, like many similar statutes in this and other countries,- was designed to secure the prompt payment of the wages of persons who, as a class, are dependent upon their earnings for the support of themselves and their families, and it was not designed to give a preference to the salaries and compensation due to the officers and employees of corporations occupying superior positions of trust and profit.” People v. Remington, 45 Hun, 329, [citing Hill v. Spencer, 61 N. Y. 274; Dean v. De Wolfe, 16 Hun, 186; affirmed, 82 N. Y. 626; Krauser v. Ruckel, 17 Hun, 463, in support of the proposition that a superintendent, general manager, or a general manager and book-keeper, is not a “laborer, servant or apprentice,” within the meaning of L. 1848, c. 40, § 18].
20. Laborer and employees; labor and services.] These terms as employed in an order appointing a receiver of a railroad, directing him to pay arrearages owing to the laborers and employees of the said consolidated corporation defendants, for labor and service actually done, were held to include the claim of an attorney for services rendered. The court drew a distinction between the words “ laborers and operatives,” “ laborers and servants,” “ laborers, servants and apprentices,” and the word “ employees,” used in the order, calling attention to the fact that the word (employee) did not occur in any of the statutes involved in the cases cited, i. e., Ericsson v. Brown, 38 Barb. 390; Aikin v. Wassor, 24 N. Y. 482, and Coffin v. Reynolds, 37 Id. 640. The ■court said further: “Aside from the difference in words, there is, I think, a distinction between the above cases and this, in the rules of construction, which should be applied. In those cases there was a statute liability created against stockholders, and such statutes are always strictly construed. Again, the courts held that it was the policy of the legislature to protect those only who are the least able to protect themselves and who earn their living by manual labor for a small compensation, and not by professional services, and this supposed legislative policy exerted a controlling influence upon the courts. In. this case it was entirely different. There was no question of policy.” . . . “The term ‘employee’ is the correlative of ‘employer,’ and neither term has either technically or in general use a restricted meaning by which any particular employment or service is indicated.” Guerney v. Atlantic & Great Western R’y Co., 58 N. Y. 359.
21. An employee is one who renders labor or service to another.] A, *384 drayman who rendered his entire service to a manufacturing company is an employee in the regular employ, within the meaning of a statute giving preferences to wages claims. Watson v. Watson Manfg. Co., 30 N. J. Eq. 588.
22. The terms “ employees ’’and “ laborers ” as used in L. of 1885, c. 376 (giving preferences in the payment of wages) includes the class who-are dependent upon their earnings for the support of themselves and their families. The statute was not designed to give a preference to-the salaries and compensation due to the officers and employees of corporations occupying superior positions of trust and profit. People v. Remington, 45 Hun, 347.
23. Under the Georgia statute (Act of 1868)—providing that hereafter the wages of laborers and employees shall not be subject to garnishment or attachment—it was held that the compensation of the president of a R. R. was not a salary within the meaning of the statute, and that he was not an employee within the meaning of the law. South and North Ala. R. R. Co. v. Falkner, 49 Ala. 115.
24. Wages.] The Pennsylvania statute exempting “ wages of laborers ” from attachment execution (Act of June, 1836, § 37) refers to-the earnings of the laborer, by his personal manual toil, and not the profits whieh a contractor derives from the labor of others. The court said : “ The statute secures to the laborer and his family the earnings of his own hands ; but this is its full extent and scope. If it were carried farther by judicial decisions it would be hard to assign a limit to its operation. The profits of every enterprise might be called the-wages of labor, with no great violence to language, and thus the collecttion of debts be abolished in many instances where ample means of payment existed. The legislature meant nothing so unreasonable or extravagant. They only meant that what a man earned by his personal labor should not be intercepted by his creditors, but should go to supply the wants of himself and family, leaving whatever other money might be due to him to be seized for his debts.” Smith v. Brooke, 49 Penn. St. 150.
25. “ Wages,” as employed in section 4251 of the U. S. Revised Statutes which reads : “ No canal boat without masts or steam power, which, required to be registered, licensed, or enrolled and licensed, shall be subject to be libeled in any of the U. S. Courts for the “ wages ” of any person who may be employed on board thereof or in navigating the same,” does not, without giving the word a stronger and peculiar definition, mean towage. The court said: “ The word ‘ wages,’ as used in this statute, is presumed to have been used with its ordinary meaning of compensation to a hired person for his services.” . . . “Its pop *385 •alar meaning and its meaning in admiralty are substantially the same.”' Ryan v. Hook, 34 Hun, 185.
26. “Wages,” as used in L. 1883, c. 349, § 1, providing that “any and all assignments hereafter made for the benefit of creditors, which shall contain or give any preference to one creditor over another credditor, except for the wages of laborers, servants, or employees, earned within six months prior thereto, shall be void,” does not include the compensation due contractors, who were not hired to do manual labor, but who were manufacturers, doing business for themselves, and employing other persons, as well as machinery, to accomplish the work they contracted to do for others. The court says in the opinion: “We think it very clear that servants, laborers or employees, who can be said to earn wages of an employer must hold such a relation to the employer that he can direct and control them in and about the work which they are doing for him.” Lang v. Simmons, garnishee, 64 Wis. 525.
27. “ Laborers and servants ” as employed in L. 1850, c. 140, § 10, (the general railroad act)—which provides that “all the stockholders of such company shall he jointly and severally liable for all the debts due or owing to any of its laborers and servants for services performed for such corporation ”—will not include a contractor with a railroad company for the construction of a part of its road. The court said: “ It is obvious from the nature and terms of this and other provisions of the act, as well as from a general policy indicated by analogous statutes, that the legislature intended to throw a special protection around a class of persons who should actually perform the manual labor of the company. To accomplish this design, it is not necessary that laborers. and servants should receive their broadest interpretation. Indeed, such, a construction would scarcely harmonize with the general scope ana. object of this and similar acts.” . . . The word “ servants ” is qualified,, and to some extent limited in its meaning by its association with the-word “ laborers,” according to the familiar maxim noscitur a sociis. It. clearly would not include every one who should perform any service in; any form for the company. Such a construction is repelled, not only-by the apparent reason for the enactment, but by the language used, which would naturally have been far more general if such had been its object. Aiken v. Wasson, 24 N. Y. 482.
III. Cases of corporators' individual liability.
28. “ Laborers, servants and apprentices,” as these terms are employed In L. 1848, c. 40,—rendering stockholders of corporations organized under the act, liable for all debts that may be due and owing to their “ laborers, servants and apprentie'es for services performed,”—will *386 not include a book-keeper and general manager. The court said : “ It Is plain, we think, that the services referred to are menial or manual services—that he who performs them must be of a class whose members usually look to the reward of a day’s labor, or services, for immediate or present support, from whom the company does not expect credit, and to whom its future ability to pay is of no consequence; one who is responsible for no independent action, but who does a day’s work, on a stated job, under the direction of a superior.” ... A general manager is not ejuadem, generis with an apprentice or laborer, and although in one sense he may render most valuable services to the corporation, he would not in popular language be deemed a servant. [Citing Hovey v. Ten Broeck, 3 Rob. 316; Dean v. De Wolf, 16 Hun, 186; Gurney v. Atlantic & Gt. Western R. R. Co., 58 Id. 367; Aiken v. Watson, 24 Id. 482; Stuyker v. Cassidy, 76 Id. 53; 32 Am. R. 262; Smith v. People, 47 N. Y. 337, dist’g; Kincaid v. Dwindle, 59 Id. 548.] Wakefield v. Fargo, 90 N. Y. 218.
29. L. 1848, c. 40, § 18,—making stockholders of corporations personally liable for the “wages” of “laborers” and “ servants,”—held, to, apply in favor of one who acted as foreman, took part in the manual labor required to manufacture the stone, kept the time of the men, solicited orders, collected bills, and did whatever was required of him. The court said: “We are inclined to think that Curtis is to be regarded as a laborer or servant within the meaning of the section cited. He rendered manual service of the same kind as that performed by the other laborers in the employ of the company, and it seems to have been one of his principal duties and not a mere incident to the position.” [Citing Conant v. Van Shaick, 24 Barb. 87; Williamson v. Wadsworth, 94 Id. 294; Hovey v. Ten Broeck, 3 Robt. 316; and Vincent v. Bamford, 42 How. Pr. 109; and dis’g Aiken v. Wasson, 24 N. Y. 482, and Balch v. New York & Oswego Midland Railroad Co., 46 Id. 521; Hill v. Spencer, 61 Id. 274; Krauser v. Ruckel, 17 Hun, 463; Dean v. De Wolf, 16 Id. 186; Coffin v. Reynolds, 37 N. Y. 640.] Short v. Medberry, 29 Hun, 40.
30. Tinder L. 1848, c. 40, § 18,—making stockholders of corporations formed under the act personally liable for “ wages ” due “ laborers and servants,”—an employee who was “ a sort of engineer, a sort of foreman, who showed the men how to work and yet worked with them, who, during the absence of the superintendent from the mines was made to act as such, who sometimes kept the time of the men, and, in fact, did everything he was ordered to do, and everything that was necessary and possible for him to do, may recover, he being within the *387 statutory meaning of the term “servant.” Vincent v. Bamford, 42 How. Pr. 113.
31. A book-keeper is not a “laborer" within L. 1848, c. 40, § 18, —making stockholders personally liable for the wages of laborers. [Citing Wakefield v. Fargo, 90 N. Y. 213.] Tr. T., 1886, Sherman v. Herbert, 2 City Ct. 314.
Wakefield v. Fargo is examined in Wildner v. Ferguson (Minn. 1890), 6 L. R. A. 338, and followed in construing the term as employed in the Minnesota statutes exempting the wages of a “laboring” man or woman from attachment.
32. Labor.] Under the Michigan Manufacturing Corporation Act— 'providing that “the stockholders of companies incorporated under this ■act shall be jointly and severally liable for all labor performed for such •company,”—the term “labor ” will not include services as secretary and book-keeper. The court said: “This term has received judicial construction in the State of Michigan. . . . These decisions are adverse to the plaintiffs claim in this action. [Citing Brockaway v. Innes, 39 Mich. 47; s. c., 23 Am. R. 348; Peck v. Brown, 39 Mich. 594.] The effect ■of these decisions is to place so restricted a meaning upon the term “ labor,” as used in the statute, and to exclude services rendered of the nature referred to in those cases, as to prove fatal to the p’aiutiff’s right ■of recovery.” .... “ I am of opinion also that under the decisions of this State, in which the provisions of kindred laws are considered, a like result is reached (Balch v. New York & Oswego Midland R. R. Co., 46 N. Y. 521; Coffin v. Reynolds, 37 Id. 640). There are several New York statutes in which different terms in this connection are used. 4Laborers’ and ‘servants’ are sometimes mentioned, and the decisions in this State apply to different statutes, which is not to be overlooked in the endeavor to ascertain their force.” Stryker v. Cassidy, 76 N. Y. 50.
33. “Laborer” and “operative,” in the statute making stockholders individually liable for compensation, does not include a travel-ling salesman on a salary of $100 a month. “ Clerk,” does. Whether “ Servant ” does or not, query ? [Citing note 1 to Cook on Stockholders, % 215.] Cole v. Hand (Tenn. 1890), 7 L. R. A. 96.
IV. Mechanics' Lien Cases.
34. Laborer.] Under the Penn, statutes of 1843 and 1862,—giving a lien to “contractors, laborers and workmen ” upon railroads, for debts and liabilities accruing to them in the construction and repair of such roads and works,—a civil engineer washeldnot to be a laborer within the intent of the legislature. The court said : “ In seeking to find what was the legislative intent in using the words ‘ laborers and workmen,’ we must *388 give to the language of the statute its common and ordinary signification. But ordinarily these words cannot be understood as embracing-persons engaged in the learned professions, but rather such as gain their livelihood by manual toil. When we speak of the laboring or working-classes, we certainly do not intend to include therein persons like civil engineers, the value of whose services rests rather in their scientific than, in their physical ability. We thereby intend those who are engaged, not in head, but in hand work, and who depend upon such hand work for their living.” Penn. & Delaware R. R. Co. v. Leuffer, 84 Penn. 171.
85. Contractor.] Under Indiana Rev. Stat. 1881, § 5286, a mere-contractor, not being in any degree bound to the duties of a servant, but only to produce or cause to be produced a specified result, is not. entitled as an employee to a lien. Mor is such a contractor for the-stringing of telegraph wires entitled to a lien by the fact that he had retained possession by refusing to allow connections to be made, and grounding the ends of the wire. Bankers’, etc. Tel. Co. of Indiana v. Bankers’, etc. Tel. Co. of N. Y., 27 Fed. Rep. 586.
V. Cases arising on contracts.
36. A contractor is deemed a servant, within the rule respondeat superior, if the contract reserves to the employer the right to direct the mode of working. See authorities in 51 Am. Dec. 208.
37. Wages.] Where a contractor was to receive pay for labor performed at rates in the printed part- of the contract or, at his option, as follows : “ The 1 wages ’ for actual labor of men and teams in performance of said work,” and, in addition, ten per cent, of'the amount of such labor,-—Reid, that “wages” here amount to “the compensation paid to a hired man for his services.”
The court said: “ This compensation to the laborer may be a specified sum for a given time of service, ora fixed sum for specified work; that is, payment may be made by the job. The word “ wages ” does not imply that the compensation is to be determined solely upon the basis of time spent in service; it may be determined by the work done. It means compensation estimated either way.” Ford & Butterfield v. St. Louis, K. & N. W. R. Company, 54 Iowa, 723.
38. Payment by the piece, and an allowance in addition thereto for board, were termed “ wages ” by the court in Hannon v. Salmon Falls M’f’g Co., 35 Me. 447; s. c., 58 Am. Dec. 718, though the word was not used in the clause of the contract in question.
39. A receipt “in full for my last year’s wages,”—Reid, not sufficiently broad to cut off an existing claim, under a special contract for-extraordinary services. Fredenburg v. Biddlecome, 17 Weekly Dig. 25.